UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAI JOUR HER,<br><br>             Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>             Defendant. | Case No.  1:21-cv-00369-AWI-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING SOCIAL SECURITY COMPLAINT**<br><br>(Docs. 20, 21)<br><br>FOURTEEN-DAY DEADLINE |

**Findings and Recommendations**

**INTRODUCTION**

Plaintiff Mai Jour Her ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for issuance of findings and recommendations.

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's appeal, granting the Commissioner's cross-motion for summary judgment, and affirming the agency's determination to deny benefits

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for supplemental security income on April 27, 2017. AR 182-83.[2] Plaintiff alleged that she became disabled on June 8, 2008, due to pain in both hands, depression, memory loss, vision impairment, and back pain. AR 193. Plaintiff's application was denied initially and on reconsideration. AR 103-07, 114-18. Subsequently, Plaintiff requested a hearing before an ALJ, and following a hearing, ALJ Timothy S. Snelling issued an order denying benefits on December 2, 2019. AR 16-34, 40-72. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making ALJ Snelling's decision the Commissioner's final decision. AR 5-9. This appeal followed.

**Hearing Testimony**

ALJ Snelling held a hearing on September 18, 2019. Plaintiff appeared with her attorney, Amanda Foss, along with an interpreter. Paul Stanford, an impartial vocational expert ("VE"), also appeared and testified. AR 42.

At the outset of the hearing, the ALJ signaled his intention to find a medically severe combination of impairments, which included exogenous obesity, osteoarthritis of both hands, depression, low vision, degenerative disc disease of the lumbar spine, a diagnosed major depressive disorder, recurrent and moderate, gastritis, and retrograde amnesia. AR 45-46.

In response to questions from the ALJ, Plaintiff testified that she has trouble with her memory. She has never applied for a job. She does not have a driver's license and she lives with her husband and children. AR 46-49.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

In response to questions from her attorney, Plaintiff confirmed that she has limitation with using her hands. She feels numbness in her left index finger and thumb all the time. She cannot bend her finger. Her children have to help her with buttons. She can shower, but her daughter has to help with washing her hair. She can grip and grasp with her right hand, but not with her left hand. She has to lift things with both hands. She can lift a pillow, but she cannot lift anything heavy. AR 50-51.

When asked about her depression, Plaintiff testified that she has mental problems because she gave birth to too many children and five of her children died in front of her. She is still depressed and sad about them. She takes medication for her depression, but she does not think that it helps. She also has issues with concentration. Her children monitor her medications. There are some days that she does not get out of bed because her depression is so bad. She is now on a new medication for her depression. AR 52-53.

When asked about household chores, Plaintiff testified that her husband and children clean, do chores around the house, go shopping and go to the store. Plaintiff maybe washes vegetables or a dish. She cannot do other chores because of her mental problems and memory problems. AR 53. She does not go shopping because she has vision problems. She stays home most of the time unless her children take her to the grocery store. She wears her glasses when she goes to the store or when she is walking. She did not bring her glasses to the hearing because she did not bring her purse. AR 54-55. About 20 years prior to the hearing, she was hit in the back of the head with a metal stick. She was unconscious and bleeding. Since that time, her vision has been poor. She does not use a cane. AR 59-60.

The ALJ then asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual limited to medium work, lift and carry 50/25, stand, walk, and sit six of eight each. The individual could occasionally climb ladders, ropes, and scaffolding. All other postural activities could be performed on a frequent basis, including climbing of ramps and stairs, crouching, crawling, kneeling, and stooping. The individual also must avoid concentrated exposure to temperature extremes, dampness, vibration, dangerous and unprotected workplace hazards, and dangerous and unprotected moving machinery. The individual also was limited to frequent gross manipulation and fine manipulation with the bilateral extremities. The individual's vocational profile

3

was between mid-late 40s and 51, with no formal education, illiterate and unable to communicate in English and no past work. AR 64-65. The VE testified that there were medium jobs in the national economy that such an individual could perform, such as packer (agricultural produce), food service worker (hospital), and hand packer. AR 65.

For the second hypothetical, the ALJ asked the VE to assume everything in hypothetical one and assume that the individual was limited to simple, repetitive tasks with no more than occasional face-to-face interaction with the general public, with coworkers, and with supervisors (one third of the workday). The VE testified that the same jobs would still be available, including the food service worker. AR 66.

For the third hypothetical, Plaintiff's counsel asked the VE to add that the individual must avoid all far acuity over three feet. The VE testified that there would not be an impact on the particular jobs. However, the VE clarified that the food service worker would need to be able to read instructions. AR 69. Additionally, if the individual had occasional gross and fine manipulation, then there would be no work for that individual. AR 70.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 16-34. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 27, 2017, the application date. AR 21. The ALJ identified the following severe impairments: obesity; osteoarthritis of the bilateral hands; major depressive order; low vision verses visual deficits of unknown etiology; degenerative disc disease of the lumbar spine; gastritis; and retrograde amnesia. AR 21-22. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments, specifically considering listings 1.02 for major dysfunction of a joint due to any cause, 1.04 for disorders of the spine, 2.02 for loss of central visual acuity, and 12.04. AR 22-23.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of medium work. She could lift and carry 50 pounds occasionally and 25 pounds frequently, could stand and/or walk and sit for six hours in an eight-hour workday with normal breaks. She could occasionally climb ladders, ropes, and scaffolds and could frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She could frequently handle and feel with the bilateral upper extremities. She must avoid concentrated exposure to extremes of heat and cold, wetness and humidity, vibrations, and dangerous and unprotected workplace hazards such as moving machinery. She could understand, remember, and apply information necessary to perform routine, repetitive work tasks, and could have no more than occasional face-to-face interaction with the general public, supervisors, and coworkers. She could maintain concentration, attention, persistence and pace for routine repetitive work tasks, and could adapt to routine repetitive work tasks and/or manage herself in an employment setting for routine, repetitive work tasks. AR 23-32. With this RFC, the ALJ found that there were jobs in the national economy that Plaintiff could perform, such as packer (agricultural produce), food service worker (hospital), and hand packer. AR 32-33. The ALJ therefore concluded that Plaintiff had not been under a disability since April 27, 2017, the date the application was filed. AR 33.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's

determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff contends that the ALJ erred at step three of the sequential evaluation by failing to evaluate evidence that Plaintiff's visual impairment meets listing 2.02, loss of central visual acuity, and listing 2.03, contraction of the visual field in the better eye. Plaintiff also contends that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's subjective complaints.

**A. Step Three**

As stated, Plaintiff argues that the ALJ failed to evaluate relevant evidence showing that Plaintiff met or medically equaled listing 2.02 "Loss of Central Visual Acuity" and listing 2.03 "Contraction of the visual field in the better eye." (Doc. 20 at 9.)

At step three, the ALJ determines whether "a claimant's impairment meets or equals an impairment listed in [20 C.F.R. part 404, subpart P, appendix 1]." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Listing of Impairments describes specific impairments of each of the major

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

body systems "which are considered severe enough to prevent a person from doing any gainful activity." *Id.* (citing 20 C.F.R. § 404.1525); *see* 20 C.F.R. § 416.925(a). If a claimant meets or equals a listed impairment he or she will be found disabled at this step without further inquiry. *Id.* (citing 20 C.F.R. § 404.1520(d)); *see* 20 C.F.R. § 416.920(d).

A claimant bears the burden of proving that his or her impairments satisfy all the criteria of a particular listing. *Id.* "For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). If a claimant's impairment or combination of impairments meets or exceeds a "listing," no specific finding is necessary as to the claimant's ability to perform his or her past relevant work or any other jobs. 20 C.F.R. § 416.920(d).

Here, Plaintiff contends that her impairment(s) met or medically equaled listing 2.02 and listing 2.03A. (Doc. 20 at 9-10.) Listing 2.02 for loss of central visual acuity requires "[r]emaining vision in the better eye after best correction is 20/200 or less." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 2.02. Listing 2.03A requires contraction of the visual field in the better eye with: "The widest diameter subtending an angle around the point of fixation no greater than 20 degrees." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 2.03A.

At step three, the ALJ determined that Plaintiff's impairments, considered singly and in combination, did not meet the criteria of any listed impairment. In reaching that conclusion, the ALJ "considered listings 1.02 for major dysfunction of a joint due to any cause; 1.04 for disorders of the spine; and 2.02 for loss of central visual acuity." AR 22. The ALJ reasoned as follows:

> Here, the medical evidence does not document listing-level severity, and no acceptable medical source mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. A more detailed discussion of the evidence is embodied in the residual functional capacity analysis in Finding 4 [RFC] below.

AR 22.

In Finding 4, the RFC, the ALJ considered Plaintiff's alleged blindness, and indicated:

> [A] routine eye test performed at her primary care provider office on January 20, 2016, during an annual physical examination, noted the claimant's visual acuity was 20/100 in

> both eyes, 20/200 in the left, and 20/100 in the right without lenses [ ]. While these findings shows [sic] deficits in the claimant's visual acuity, they are inconsistent with her allegations at a consultative examination that she could see nothing, or could only count fingers. The undersigned notes consultative ophthalmologist Dr. Hinton, M.D. was unable to explain the claimant's functional vision loss by any pathological findings on her eye examination although he did find bilateral 1+ nuclear sclerosis and bilateral macular drusen, and he advised the claimant needed a glaucoma workup [ ].

AR 31.

Plaintiff argues that the ALJ erred at step 3, warranting remand, because she met the criteria of listing 2.02 for loss of central visual acuity. To support this assertion, Plaintiff cites record evidence from the consultative examiners, Dr. Samuel P. Hinton and Dr. Birgit Siekerkotte, both of whom found that her visual acuity was extremely low. AR 425. Plaintiff also cites Dr. Hinton's "direct assertion that Plaintiff's best corrected vision in her better eye was 20/200 or worse." (Doc. 20 at 10.)

To establish statutory blindness under title XVI, the Commissioner requires evidence showing only that the claimant's central visual acuity is 20/200 or less in the better eye with the use of a correcting lens, "provided that those measurements are consistent with the other evidence in [the] case record." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 2.00(A)(3). The Commissioner does "not need documentation of the cause of [the] blindness." *Id.*

Insofar as Plaintiff references Dr. Siekerkotte's opinion regarding low vision, this argument is not persuasive or sufficient to meet Plaintiff's burden to prove that her vision impairment satisfies the criteria of listing 2.02. Importantly, Dr. Siekerkotte did not provide evidence that Plaintiff's central visual acuity was 20/200 or less in the better eye with the use of a correcting lens. Instead, during the consultative examination on July 30, 2017, Dr. Siekerkotte attempted to administer the Snellen test, but Plaintiff stated that she could not see anything. Plaintiff could discern the number of fingers from 3 feet away from her and, when walking, she did not bump into anything and could maneuver around okay. AR 425. Dr. Siekerkotte did not identify any functional limitations based on Plaintiff's alleged vision issues. AR 427-28.

To the extent Plaintiff references Dr. Hinton's opinion, Plaintiff correctly notes that Dr. Hinton identified findings that Plaintiff's best corrected vision as of 9/8/17 in the better eye was limited to "20/200 or worse." AR 431. Dr. Hinton also indicated that Plaintiff's best corrected vision was 20/CF

in each eye.[4]  AR 445.  Notwithstanding these statements by Dr. Hinton, the ALJ weighed the fact that Dr. Hinton could not explain Plaintiff's functional vision loss by any pathological findings, including 1+ cataracts or drusen.  AR 31.  Although the regulations do not require documentation of the cause of a claimant's blindness, the regulations do require that visual acuity be consistent with other evidence in the record.  20 C.F.R. Pt. 404, Supt. P, Appx. 1 § 2.00(A)(3).  The ALJ's assessment of Dr. Hinton's opinion identifies inconsistencies between Plaintiff's subjective statements regarding her visual acuity and the objective evidence, which lacked pathological findings.

The record also suggests that Dr. Hinton's objective testing was not reliable.  To that end, the ALJ considered and found at least minimally persuasive subsequent medical findings from the state agency consultant, Dr. A. Khong.  Dr. Khong reviewed Dr. Hinton's opinion and indicated that both the visual acuity and visual functional deficits were based entirely on subjective reports and not true objective findings, resulting in insufficient evidence to support a medically determinable impairment that could reasonably account for the alleged physical symptoms.  AR 32, 79.  Relevant here, Dr. Khong stated:

> At the ophtho CE, the claimant reported that she had never seen an eye doctor nor ever had glasses prescribed.  She had a minimal refractive error but claimed she could see no better than CF in either eye.  The pupils reacted normally and the claimant demonstrated optokinetic nystagmus (+OKN) which is a strong indication that she is able to see better than she claims.  Cataracts were minimal.  The optic nerves looked healthy.  Some macular drusen were present but would not account for severe visual loss.  The CE opined that there was "not enough pathology to explain the vision loss [alleged]."  The claimant claimed to have tunnel vision in the R eye and essentially no VF in the L eye.  The CE opined that the VF result was NOT RELIABLE and NOT CONSISTENT with the ocular findings.  He noted that no VF defect would be expected given the ocular findings.  A diagnosis of "functional vision loss" was made.  In medical terms, "functional" means "non-organic" or "non-physiologic."  In other words, the visual loss is contrived.

AR 79-80.

---

[4] A "visual acuity recorded as CF (counts fingers) … indicates that no optical correction will improve [the claimant's] visual acuity."  20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 2.00(A)(5)(a)(ii).  If a claimant's visual acuity in an eye is recorded as CF, the Commissioner "will determine that [the claimant's] best corrected central visual acuity is 20/200 or less in that eye."  *Id.*  However, the record reflects that Dr. Hinton's visual acuity testing lacked reliable, objective support.

1 Based on the foregoing, the Court finds that the ALJ properly considered that measurements of Plaintiff's visual acuity were not consistent with other evidence in the case record, such as pathological findings, and that the record lacked the objective findings necessary to meet listing 2.02. The Court concludes that the ALJ did not err at step 3 of the sequential evaluation in determining that Plaintiff did not meet the criteria of listing 2.02 for loss of central visual acuity.

Plaintiff also argues that the ALJ erred at step 3, warranting remand, because she met the criteria of listing 2.03A, which requires contraction of the visual field in the better eye with: "The widest diameter subtending an angle around the point of fixation no greater than 20 degrees." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 2.03A. To support this argument, Plaintiff states, "Dr. Hinton found that Plaintiff's residual visual field in the better eye was 20 degrees or less in widest diameter. Ar. 431. Dr. Hinton included copies of visual field testing of each eye to confirm this objective fact. Ar. 440-41." (Doc. 20 at 10.)

Having considered the medical record and the ALJ's decision, the Court finds that Plaintiff has failed to satisfy her burden to meet the specified medical criteria for listing 2.03A. While Plaintiff correctly identifies Dr. Hinton's findings regarding her visual field, she omits reference to Dr. Hinton's notations that the visual field testing reliability was only 7/10 in the left eye and questionable in the right eye. AR 440-41. Dr. Hinton also indicated that it was not a reliable field consistent with ocular pathology. AR 431.

Further, the ALJ expressly considered that this visual field testing lacked reliability. AR 29. As discussed above, the ALJ found persuasive Dr. Khong's opinion that Dr. Hinton's visual field testing was not reliable and not consistent with ocular pathology. AR 32, 79-80. Absent valid, reliable visual field testing, Plaintiff has not met her burden to establish the necessary criteria for listing 2.03A. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 2.00(A)(6)(c) (To determine statutory blindness based on visual field loss in your better eye (2.03A), we need the results of a visual field test . . . . ).

For these reasons, the Court finds that the ALJ did not err at step three of the sequential evaluation.

///
///

**B. Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject her subjective testimony.  (Doc. 20 at 12.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (2004).  First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms.  AR 26.  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided clear and convincing reasons to discount Plaintiff's subjective complaints.  First, the ALJ considered Plaintiff's complaints of back pain and occasional pain in her hands, knees, and hips, but noted that physical examination findings were benign, with an occasional finding of tenderness to palpation in her lumbar spine.  AR 31.  Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The record reflects relatively benign objective findings, with occasional findings of tenderness to palpation, generally mild.  AR 277-79 (3/17/17), 282-83 (3/3/17; complaints of worsening back pain, "mild tenderness to palpation" of lumbar spine), 296 (10/11/16; "mild tenderness to palpation" of lumbar spine), 307 (7/28/16; "mild tenderness to palpation" of lumbar spine), 315 (5/17/16), 322-24 (2/19/16; complaints of back pain, shoulder pain, arm pain, headache and body ache, but only "mild tenderness to palpation" of lumbar spine), 331 (1/20/16; no evidence of joint pain, tenderness or deformity, full range of motion intact to all major joints),  342 (8/27/15; same), 374 (5/10/17; same), 410 (6/28/16;

"mild tenderness to palpation"), 459-60 (7/30/19; "tenderness to palpation" of hands and lumbar spine), 479 (2/5/19).

Second, the ALJ considered that Plaintiff's subjective complaints of back pain did not result in her primary care provider referring Plaintiff for x-rays or an orthopedist or other back specialist, and she only was prescribed NSAID medications such as ibuprofen and Sulindac. AR 31. An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment). The ALJ's determination that Plaintiff's back pain was treated only with ibuprofen and Sulindac is supported by substantial evidence in the record. *See*, *e.g*., AR 279, 284, 297 (Ibuprofen, Sulindac), 306-07 (same), 324 (Ibuprofen), 410 (Sulindac),

Third, with regard to her mental health treatment, the ALJ acknowledged the mental health records showing that Plaintiff's insomnia and depression were resistant to treatment with antidepressants and sleep aids, but that she attended her psychiatric appointments regularly and was compliant with her prescribed medication regimen. The ALJ noted that she was not referred to for individual or group therapy. AR 31.

Plaintiff complains that the ALJ erred by concluding that Plaintiff's symptoms were no more than moderate because she was not referred for individual or group therapy. (Doc. 20 at 12.) However, it is not apparent from the decision that the ALJ drew an adverse inference or otherwise discounted Plaintiff's subjective complaints based on a lack of therapy.

The ALJ's decision reveals that he accounted for Plaintiff's Major Depressive Disorder, recurrent, moderate in the RFC, restricting Plaintiff to simple repetitive routine tasks, with only occasional interaction with the public, co-workers, and supervisors. AR 31. These restrictions in the mental RFC are consistent with the restrictions identified by the state agency physician, Dr. D. Lam, Ph.D., who concluded – despite moderate mental limitations – Plaintiff generally retained the ability to perform simple tasks in a low demand setting with limited social contact. AR 81. On reconsideration, state agency physician Norman Zukowsky, Ph. D., adopted Dr. Lam's opinion. AR 95. The ALJ found the opinions of Drs. Lam and Zukowsky persuasive and consistent with Plaintiff's mental health

treatment records showing Plaintiff interacted with her family, watched television and movies, and cooked and shopped with her children.[5]  AR 31.  Plaintiff has not challenged the ALJ's assessment of these medical opinions.

Even if one of the reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied;
2. Defendant's cross-motion for summary judgment be granted and the agency's determination to deny benefits be affirmed; and
3. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Mai Jour Her.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being

---

[5] An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms").  Even where a Plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**November 18, 2022**__                    /s/ *Barbara A. McAuliffe*    _
                                                                                                           UNITED STATES MAGISTRATE JUDGE